DYSART, J.,
concurs, with reasons.
_LJ agree with the majority that the record does not demonstrate that Dr. Giles’ management of Mr. Gaffney’s Coumadin usage fell below the standard of care of a treating cardiologist. I likewise concur in the majority’s finding that Mr. Gaffney’s residual maladies did not result from treatment he received from Dr. Giles or his use of Coumadin. I further agree with the majority that Mr. Gaffney experienced some deterioration of his condition as a result of the delay in his seeking medical-attention due to the unreturned phone calls. I write separately, however, to note that, in my opinion, the record does not warrant a finding that Dr. Giles breached the standard of care by failing to return Mr. Gaffney’s telephone calls.
The evidence of the calls to Dr. Giles was the testimony of Mr. Gaffney who testified that, when he called Dr. Giles’ office, he was told that Dr. Giles had just left. The person with whom Mr. Gaffney spoke indicated that she would page Dr. Giles and have him return the call.[1] Mr. Gaffney testified that he attempted to contact Dr. Giles again the next day (a Saturday); however, his testimony was not specific as to whether he spoke with anyone at that time. He simply stated that he “tried to call Dr. Giles again” and that, after he “didn’t hear from him,” he “decided ... [to] try to call UAB again.”
| PDr. Giles testified that, if a call was made to one of his staff members, he expected for that call to be communicated to him. Similarly, in 2000 and 2001, LSUMC had a call service which he expected would contact him in the event that a patient called. When questioned as to whether there was a “substitute physician” who would take a call if the answering *1115 service could not reach him, Dr. Giles responded that there was, for the cardiology division, “an on-call, always somebody on call.” Dr. Giles was then asked why Mr. Gaffney’s calls were not returned, to which he responded, as the majority notes, that he “[had] no idea.”
According to Dr. Giles, he received no messages that Mr. Gaffney had called his office. Nor were any messages left on the answering machine at Dr. Giles’ research office.[2]
The record is devoid of any evidence that LSUMC relayed Mr. Gaffney’s telephone calls to Dr. Giles. The only evidence presented at trial was that Mr. Gaff-ney called LSUMC and left at least one message with a person who answered the call. Absent evidence that Dr. Giles received messages that Mr. Gaffney had called his office, I do not believe that any fault can be assigned to Dr. Giles. Accordingly, in my opinion, the only party against whom fault should be assessed for the failure to return phone calls is LSUMC.

. Mr. Gaffney was unsure whether that person was with an answering service; he believed it was someone in Dr. Giles' office.

. Dr. Giles had both a clinical office where he saw patients and a research office. He discouraged patient calls at the research office as it was not designed for patient care. It was not covered by an answering service; however, Dr. Giles testified that there were no messages left by Mr. Gaffney.